UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES E. MITCHELL,                    ) | |
|     *Plaintiff,*                    ) | |
|                     ) | |
|     *v.*                    ) | 1:15-cv-01881-JMS-DML |
|                     ) | |
| MUNCIE COMMUNITY SCHOOLS, KATHY RAY,   ) | |
| TIM HELLER, MARK BURKHART, LON SLOAN,   ) | |
| TOM JARVIS, REBECCA THOMPSON, JOE MAR-   ) | |
| TINEZ, DAN JUSTICE, GERRY MOORE, DILYNN   ) | |
| PHELPS, PAUL DYTMIRE, DEBORAH BADDERS,   ) | |
| CHRIS SMITH, JENNY LOCKE, KIM FRAZIER,   ) | |
| and SUZANNE CRUMP,                    ) | |
|     *Defendants.*                    ) | |

## ORDER

Presently pending before the Court in this employment discrimination case is Defendants'

Renewed Motion to Dismiss Plaintiff's Amended *Pro Se* Complaint.  [Filing No. 29.]

## I.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the

claim showing that the pleader is entitled to relief.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

(quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary, the statement need only 'give

the defendant fair notice of what the…claim is and the grounds upon which it rests.'"  *Erickson*,

551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual mat-

ter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In reviewing the sufficiency of the

complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in

favor of the plaintiff.  *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir.

2011).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The factual allegations in the Amended Complaint filed by *pro se* Plaintiff James Mitchell, which the Court must accept as true at this time, are as follows:

Mr. Mitchell, who is African American, was a custodian for Muncie Community Schools from 2008 until 2015.  He sets forth numerous allegations regarding individuals that he worked with, including that:

- Shortly after Mr. Mitchell began working at Muncie Community Schools, Defendant Suzanne Crump, Assistant Principal at Muncie Central High School, started documenting his work performance "with every little detail," and "would recruit [his] co-workers to watch and document everything [he] did or didn't do…." [Filing No. 27 at 5.] Ms. Crump gave Mr. Mitchell his first evaluation and reprimand in June 2009, and wanted him to move to work at another building after six months.  [Filing No. 27 at 5.]

- During his employment, Mr. Mitchell sent "copies of [his] concerns" to Defendant Tim Heller, former Superintendent of Muncie Community Schools. [Filing No. 27 at 4.] Mr. Heller did not address the issues Mr. Mitchell raised, nor did he "utilize a diversity or sensitivity program so that all the employees could benefit from it." [Filing No. 27 at 4.]

- Mr. Mitchell sent copies of his evaluations from June 2, 2009, April 16, 2010, and April 13, 2013 to Defendant Mark Burkhart, former Associate Superintendent/Finance of Muncie Community Schools, which he claims show that he was being harassed and "painted as a bad employee." [Filing No. 27 at 4-5.]

- From January to May 2009, Defendant Paul Dytmire, a previous custodian on the day shift at Muncie Central High School, created and maintained a hostile

work environment by "sabotaging [Mr. Mitchell's] work and circulating false information about [him] as well as recruiting others to help him sabotage [Mr. Mitchell's] work." [Filing No. 27 at 7.]

- In 2009, Defendant Deborah Badders, former custodian at Muncie Central High School, maintained a hostile work environment by "circulating false information about [Mr. Mitchell] through lies and recruiting other co-workers to continue the lies." [Filing No. 27 at 7.]

- Also in 2009, Defendant Chris Smith, Principal at Muncie Central High School, never addressed Mr. Mitchell's concerns and "continued to let the negative atmosphere and hostility go on among the employees which demonstrates a direct disregard for [Mr. Mitchell] as a black man." [Filing No. 27 at 7.]

- Additionally, in 2009 Defendant Jenny Locke, custodian at Muncie Central High School, was "circulating false information about [him] and creating a negative atmosphere that followed [him] throughout [his] employment that…made it difficult to stay focused on [his] work." [Filing No. 27 at 7.]

- In April 2010, Defendant Lon Sloan, former Director of Facilities for Muncie Community Schools, asked Mr. Dytmire and others to document all information regarding Mr. Mitchell "in a concerted effort to get [him] fired." [Filing No. 27 at 5.] On May 6, 2010, Mr. Sloan sent a memo to Mr. Burkhart stating that Mr. Mitchell should not be retained for the next year. [Filing No. 27 at 5.] Mr. Sloan "recruited others to document and watch [Mr. Mitchell's] every move because [he is] an African American." [Filing No. 27 at 5.]

- In April 2010, Defendant Tom Jarvis, former Athletic Director for Muncie Community Schools and the supervisor of the custodians, gave Mr. Mitchell a "poor inspection and evaluation report and did not want [Mr. Mitchell] to continue at Muncie Central because [he is] black." [Filing No. 27 at 5.]

- From 2008 to 2012, Defendant Joe Martinez, Custodial Foreman, would come to Muncie Central High School and Southside High School and "check on the white custodians but would never check on [Mr. Mitchell] or ask if [he] needed anything." [Filing No. 27 at 6.] Mr. Martinez would also tell the white custodians not to help Mr. Mitchell with any of his work, which made his coworkers "uneasy being around [him]." [Filing No. 27 at 6.]

- On May 28, 2010, Defendant Dan Justice, Custodial Supervisor, submitted a memo to Mr. Sloan stating that Mr. Mitchell should not be retained for the next year. [Filing No. 27 at 6.] Mr. Justice's attitude toward Mr. Mitchell was "very demeaning," and Mr. Justice would never interact with Mr. Mitchell or ask how he was doing, would check on the white custodians but not on Mr. Mitchell, and would always ask Mr. Mitchell's coworkers about Mr. Mitchell which

"contributed to the negative perception among [his] coworkers."  [Filing No. 27 at 6.]

- From 2010 to 2012, Defendant Gerry Moore, former Assistant Principal at Southside High School, would "let other white custodians get away with violating school policy without reprimand[]s but would write [Mr. Mitchell] up for what [Mr. Moore] said was a violation of school policy" and, Mr. Mitchell believes, because he was black.  [Filing No. 27 at 6.]  Mr. Moore would not address any of Mr. Mitchell's concerns about coworkers using offensive language and would "paint [Mr. Mitchell] as a difficult employee," which contributed to the hostile work environment.  [Filing No. 27 at 6.]

- In 2012, Mr. Mitchell spoke with Defendant DiLynn Phelps, Director of Diversity and Community Services, about his coworkers "using derogatory speech and pictures towards [him]."  [Filing No. 27 at 6.]  Ms. Phelps indicated that she would talk to Superintendent Heller, but Mr. Mitchell never heard back from either of them.  [Filing No. 27 at 6-7.]

- From 2010 to 2015, Defendant Rebecca Thompson, former principal at Southside High School, "made her feelings known to several administrators and coworkers from 2010 – 2015 that she just didn't like [Mr. Mitchell] which maintained [a] negative atmosphere…."  [Filing No. 27 at 6.]  Ms. Thompson also told other principals that Mr. Mitchell "was worthless" and that she did not know why he was "still around."  [Filing No. 27 at 6.]  This "continued the hostile work environment throughout the school system."  [Filing No. 27 at 6.]

- In January 2015, Defendant Kim Frazier, custodian at Mitchell Elementary, "provok[ed] an altercation that [led] to [his] termination," by using derogatory speech and saying that the Muncie Community School System did not "want [Mr. Mitchell] here anyway."  [Filing No. 27 at 7.]

Mr. Mitchell filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 23, 2015 ( the "First Charge"), stating that he believed he had been suspended due to his race, in violation of Title VII of the Civil Rights Act of 1964, as

amended.[1] [Filing No. 30-1.]  That same day, Muncie Community Schools sent Mr. Mitchell a letter stating that it was terminating his employment "[b]ased on recommendations provided to my office by various individuals who have supervised your Muncie Community Schools…work assignments…" [Filing No. 1-1.]  In response to the First Charge, the EEOC issued a Dismissal and Notice of Rights ("Right to Sue Letter") on February 11, 2015, stating that it was "unable to conclude that the information obtained establishes violations of the statutes," and that "[n]o finding is made as to any other issues that might be construed as having been raised by this charge." [Filing No. 30-2.]  Mr. Mitchell filed another Charge of Discrimination with the EEOC on May 8, 2015 (the "Second Charge"), stating that he had been terminated and believed he had been discriminated against based on his race in violation of Title VII.  [Filing No. 30-3.]  The EEOC issued a Right to Sue Letter on August 26, 2015, noting that it was "unable to conclude that the information obtained establishes violations of the statutes."  [Filing No. 30-4.]

Mr. Mitchell initiated this lawsuit on November 30, 2015, originally naming only "Muncie Community Schools and its administrators" as defendants.  [Filing No. 1.]  Defendants moved to dismiss the original Complaint on January 8, 2016, [Filing No. 10], and Mr. Mitchell then moved to file an Amended Complaint, [Filing No. 12].  The Court granted Mr. Mitchell leave to file an Amended Complaint, and he did so and named Muncie Community Schools and sixteen of its employees as Defendants.  [Filing No. 27.]  In the Amended Complaint, Mr. Mitchell appears to

---

[1] The Court may consider Mr. Mitchell's EEOC Charges, and the EEOC's responses thereto, on a Motion to Dismiss, even though they are not attached to Mr. Mitchell's Amended Complaint.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009) (court can consider documents that are "central to [plaintiffs'] case" on a motion to dismiss); *Lucas v. Ferrara Candy Company*, 2014 WL 3611130, *1 (N.D. Ill. 2014) (court may consider EEOC Charges on motion to dismiss because they "include facts consistent with the Amended Complaint"); *Butler v. Chicago Transit Authority*, 2014 WL 3939654, *7 (N.D. Ill. 2014) (court considered EEOC Charge on motion to dismiss because it was "integral to [plaintiff's] discrimination claims").

allege claims for race discrimination, retaliation, and hostile work environment.  [*See* Filing No. 27.]  He seeks to be reinstated to his job with backpay including benefits, for Defendants to "aggres[s]ively update and utilize a diversity and sensitivity program for all employees," and damages of $50,000 for mental, physical, and emotional suffering and "economic stress."  [Filing No. 27 at 8.]

### III.
#### DISCUSSION

In their Motion to Dismiss, Defendants set forth two main arguments: (1) that any claims Mr. Mitchell did not include in the Second Charge are barred; and (2) that any allegations related to the time period from 2009 to 2013 are time-barred.  [Filing No. 30 at 5-7.]  The Court will address each argument in turn.

#### A.  Scope of EEOC Charge

In their Motion to Dismiss, Defendants argue that Mr. Mitchell cannot bring claims for retaliation or hostile work environment because they are not included in the Second Charge.  [Filing No. 30 at 5-6.]  Defendants also contend that Mr. Mitchell is not excused from failing to file an EEOC Charge related to his retaliation and hostile work environment claims because he "has familiarity with EEOC and filing charges with that agency," and nothing prevented him from doing so.  [Filing No. 30 at 6.]

In response, Mr. Mitchell argues that Defendants use information outside the scope of the Second Charge to respond to the Charge – particularly information from his personnel file.  [Filing No. 33 at 3.]  He contends that he was not aware of the contents of his personnel file, which provided information to support his retaliation and hostile work environment claims, until after he filed the Second Charge and Defendants responded.  [Filing No. 33 at 3-4.]

On reply, Defendants argue that they are free to rely on information not included in the Second Charge to respond to the Charge. [Filing No. 34 at 2.] They also assert that Mr. Mitchell was required to file a Charge of discrimination with the EEOC within 300 days of the occurrence of the discrimination, and may not bring a lawsuit for claims that were not included in a prior EEOC Charge. [Filing No. 34 at 2.] Accordingly, they argue, Mr. Mitchell cannot bring claims for retaliation or hostile work environment because they were not included in the Second Charge, which is the only Charge for which the Right to Sue Letter falls within the 90-day period before the lawsuit was filed. [Filing No. 34 at 2-3.] Defendants also assert that Mr. Mitchell has not shown that any action by Defendants actively prevented him from learning the information in his personnel file, and that he was free to examine the file at any time. [Filing No. 34 at 4.] Defendants also note that Mr. Mitchell "is not a stranger to filing EEOC complaints," and provide an EEOC Charge he filed in 2013, and documents from his personnel file that were included in Defendants' response to that Charge. [Filing No. 34 at 4.] Defendants argue that Mr. Mitchell is "being disin-genuous when he suggests…that he had no idea of the documents contained in his personnel file." [Filing No. 34 at 4.] Finally, Defendants argue that Mr. Mitchell has not set forth any evidence to indicate that equitable tolling would apply to his failure to include certain allegations in his previous EEOC Charges. [Filing No. 34 at 5.]

The Court notes at the outset that an employment discrimination lawsuit brought under Title VII must be filed in a district court within 90 days after the receipt of a right to sue notice from the EEOC. *See Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 270 (7th Cir. 2004). Mr. Mitchell does not dispute Defendants' argument that the Second Charge is the only EEOC Charge the Court should consider, because it is the only Charge for which a corresponding Right to Sue

Letter was received within the 90-day period before this lawsuit was filed.  Accordingly, for purposes of this argument, the Court's analysis will focus only on the scope of the Second Charge.

"'A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if [his] allegations fall within the scope of the charges contained in the EEOC complaint.'"  *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000) (quoting *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996)).  In order to determine whether Mr. Mitchell's allegations related to his retaliation and hostile work environment claims fall within the scope of the Second Charge, the Court must consider whether the allegations are "'like or reasonably related to'" the allegations contained in the Second Charge.  *Kuhn v. United Airlines, Inc.*, --- Fed. Appx. ----, 2016 WL 946183, *3 (7th Cir. 2016); *see also Conley*, 215 F.3d at 710 (quoting *Cheek*, 97 F.3d at 202).  Claims are considered reasonably related when there is "a factual relationship between them."  *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001).  In other words, "the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*."  *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphases in original).

Mr. Mitchell stated in the Second Charge:

I have been a custodian for Muncie Community Schools since 2008.  On Friday, January 9, 2014, a white coworker, Kim, and I got into an argument.  She started to call me a nigger, but stopped at Nig.

I complained about this to two teachers, Ms. Lowe and Ms. Hahn.  On January 12, 2014, supervisor, Joe Martinez, suspended me pending investigation for the incident with Kim on Friday.  I told Joe that Kim called me worthless and almost called me a nigger.  He said it is under investigation and I am suspended until further notice.

I received a letter dated January 22, 2015, terminating my employment.  Kim was not disciplined.

- 8 -

I believe I have been discriminated against based on my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

[Filing No. 30-3.]

The Court finds that Mr. Mitchell's retaliation claim falls within the scope of the Second Charge. Mr. Mitchell stated in the Second Charge that he complained about his co-worker to two teachers, was suspended by his supervisor pending an investigation, and was subsequently fired. [*See* Filing No. 30-3.] This type of conduct could support a retaliation claim, and allegations supporting the claim are "like or reasonably related to" the allegations contained in the Second Charge. *Kuhn*, 2016 WL 946183 at *3.

Mr. Mitchell's hostile work environment claim is a different story, however. The only allegation in the Second Charge is that one teacher used a racial epithet. This single incident is not enough to support a hostile work environment claim, *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 841 (7th Cir. 2009) (holding that occasional inappropriate comments do not rise to the level of an objectively hostile work environment), and does not describe the same conduct, or implicate the same individuals, as Mr. Mitchell's allegations in the Amended Complaint, *Cheek*, 31 F.3d at 501.

Additionally, the Court rejects any argument based on either equitable estoppel or equitable tolling that Mr. Mitchell did not know of facts supporting a hostile work environment claim, so his failure to exhaust administrative remedies is somehow excused. First, a hostile work environment claim would be based on treatment Mr. Mitchell experienced during his employment – treatment that he would be aware of without having to review his personnel file or any other documents. Any argument that he was not aware of the treatment he received until he saw his personnel file is nonsensical. Indeed, if Mr. Mitchell needed to see his personnel file to know that he was subject to a hostile work environment, then he was not, in fact, subject to a hostile work environment. Such a claim requires proof, among other things, that the work environment was both subjectively

- 9 -

and objectively offensive.  *Smith v. Ne. Illinois Univ.*, 388 F.3d 559, 566 (7th Cir. 2004).  If Mr. Mitchell did not know he had a hostile work environment claim until he saw his personnel file (as he argues), then such a claim would fail as a matter of law because that would indicate that he did not subjectively perceive the environment as offensive when he worked there.

Second, even if Mr. Mitchell somehow did not realize he might have a hostile work environment claim, he has not pointed to any authority that would excuse him from exhausting his administrative remedies by filing a new Charge related to that specific claim, since that claim does not reasonably grow from the claims included in the Second Charge.  *See Geldon v. South Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (must exhaust administrative remedies by filing EEOC  Charge for all claims, unless they are "like or reasonably related to the allegations of the charge and growing out of such allegations").[2]

In sum, Mr. Mitchell's retaliation claim is within the scope of the Second Charge, but his hostile work environment claim is not.  Because Mr. Mitchell failed to exhaust his administrative remedies as to the hostile work environment claim, that claim is not properly before the Court and must be dismissed.

### B.  Allegations Related to Conduct from 2009 to 2013

Defendants argue that any allegations related to conduct from 2009 to 2013 should be stricken from the Amended Complaint because Mr. Mitchell had 300 days from the date an action occurred to file an EEOC Charge and did not do so based on those allegations.  [Filing No. 30 at 7.]

---

[2] The Court notes that there is nothing improper with Defendants relying on Mr. Mitchell's personnel file to respond to his EEOC Charges, and that this reliance does not excuse Mr. Mitchell's failure to include his hostile work environment claim in the Second Charge.  As noted above, Mr. Mitchell did not need to review his personnel file to know what type of treatment he received during this employment.

Mr. Mitchell responds that Muncie Community Schools "took into account my work history from the day I was hired," and that Muncie Community Schools relied on the individuals he discusses in the Amended Complaint in justifying Mr. Mitchell's termination. [Filing No. 33 at 4.]

On reply, Defendants argue that Mr. Mitchell "does not advance any argument to defeat or even address the Defendants' argument in the Motion to Dismiss that specific allegations…are untimely." [Filing No. 34 at 6.]

It appears to the Court that Mr. Mitchell does address Defendants' untimeliness argument, and asserts that he can rely on allegations related to conduct from 2009 to 2013 because he has alleged that the decisionmakers based their decisions on his entire employment history, which includes allegations from as early as 2009. [*See* Filing No. 33 at 4 (acknowledging Defendants' timeliness argument, referencing the paragraphs Defendants seek to strike, and stating that "the wording of recommendations, various individuals and assignments in my termination letter would indicate that more than one reference, person or situation was taken into account to form the decision to terminate me," that "I feel that [Muncie Community Schools] took into account my work history from the day I was hired," that his allegations dating back to 2009 reference "the same individuals and information dating back to 2009 that Muncie Community Schools used in defending their termination of me," and that the allegations "give[] support to the direct correlation between my EEOC charge, [Muncie Community Schools'] response and my Amended Complaint…." [Filing No. 33 at 4.]

The Court agrees with Mr. Mitchell, and declines to strike allegations in the Amended Complaint that reference actions during the period from 2009 to 2013. An employee can "us[e] ….prior acts as background evidence in support of a timely claim." *National R.R. Passenger Corp.*

- 11 -

*v. Morgan*, 536 U.S. 101, 113 (2002).  Mr. Mitchell's allegations regarding various employees' actions during the time period from 2009 to 2013 constitute background information to support his discrete claim that his termination was a result of discrimination and retaliation.  The Court declines to strike paragraphs from the Amended Complaint related to actions from 2009 to 2013 because Mr. Mitchell contends that the decisionmakers relied upon the information in those allegations to ultimately terminate him, and his termination is the basis for his discrimination and retaliation claims.

The Court notes, however, that to the extent claims are based solely on discrete discriminatory or retaliatory acts that occurred more than 300 days before he filed the Second Charge, those claims would be barred.  *See Brumfield v. City of Chicago*, 2008 WL 4181739, *2 (N.D. Ill. 2008)* ("To the extent that Plaintiff bases her claim on discrete discriminatory or retaliatory acts that occurred [300 days before filing EEOC Charge], those allegations are untimely").  Specifically, the only allegations against many of the Defendants relate to actions they allegedly took more than 300 days before Mr. Mitchell filed the Second Charge.  While Mr. Mitchell can reference those individuals' actions to support his claims of discrimination and retaliation, he cannot bring separate claims against those individuals for actions they took outside of the 300-day window.  [*See, e.g.*, Filing No. 27 at 4-5 (alleging that Mr. Burkhart took actions in 2009, 2010, and 2013 only); Filing No. 27 at 7 (alleging that Mr. Dytmire, Ms. Badders, Mr. Smith, and Ms. Locke only took actions in 2009).]

Unfortunately, Defendants have put this case in an odd procedural posture.  In their Motion to Dismiss, Defendants do not request dismissal of certain Defendants, but only dismissal of certain "allegations."  [*See* Filing No. 30 at 7 (referring to "allegations" being time-barred, and not claims against certain Defendants being time-barred).]  At the same time, however, Defendants

"reserve the right to file additional motions to dismiss addressed to specific defendants named in the Amended Complaint after the Court rules on the instant Motion to Dismiss," [Filing No. 30 at 7]. The Court strongly disfavors piecemeal litigation, as it does not promote judicial economy. However, at the same time, the Court will not make arguments for Defendants that they have not specifically raised. *See Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present… Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief") (quotation omitted). Arguments addressed to specific Defendants could easily have been raised in the pending motion, and Defendants have not identified any reason why they did not do so. The Court will afford Defendants one more chance to raise those arguments. Given that Defendants are all represented by the same counsel, any outstanding dismissal arguments must be raised in a single Motion to Dismiss (with one supporting brief), and must be filed within 30 days of the date of this Order.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendants' Renewed Motion to Dismiss Plaintiff's Amended *Pro Se* Complaint, [Filing No. 29], to the extent that Mr. Mitchell's hostile work environment claim is **DISMISSED WITH PREJUDICE**.[3] The Court **DENIES IN**

---

[3] The Court notes that it is dismissing Mr. Mitchell's hostile work environment claim with prejudice. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend his complaint as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011). The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim." Mr. Mitchell amended his Complaint once in response to Defendants' first motion to

- 13 -

**PART** Defendants' Renewed Motion to Dismiss Plaintiff's Amended *Pro Se* Complaint, [Filing No. 29], to the extent that the Court declines to dismiss Mr. Mitchell's retaliation claim, or to strike the paragraphs of his Amended Complaint which relate to conduct occurring between 2009 and 2013.  To the extent Defendants wish to raise any additional dismissal arguments, they must file a single Motion to Dismiss (with a single supporting brief) within **30 days of the date of this Order**.

Date:  May 27, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

James E. Mitchell
217 W. Charter Dr.
Muncie, IN 47303

---

dismiss, and then chose not to exercise his right to amend again as a matter of course pursuant to Rule 15(a)(1)(B) in response to the current Motions to Dismiss but, instead, chose to brief the motion and adjudicate the issues.  The Court is not required to give Mr. Mitchell another chance to plead his hostile work environment claim because he has already had multiple opportunities to cure deficiencies in his pleadings.  *See Emery v. American General Finance, Inc.*, 134 F.3d at 1321, 1323 (7th Cir. 1998).  Further, given the basis for the Court's dismissal of that claim, there is no indication that Mr. Mitchell could, in fact, successfully amend his complaint to cure the defects identified above, even if given the opportunity to do so.  Considering the procedural history of this case and the basis for the Court's dismissal, the Court, in its discretion, dismisses Mr. Mitchell's hostile work environment claim with prejudice.